UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:21-CR-00288-3 |
| | ) | |
| | ) | JUDGE CAMPBELL |
| BRYON BROCKWAY | ) | |

**RESPONSE OF THE UNITED STATES**
**TO DEFENDANT BROCKWAY'S MOTION TO EXCLUDE EVIDENCE**
**(DOC. NO. 292)**

COMES NOW the United States of America, by and through Henry C. Leventis, United States Attorney and the undersigned Assistant United States Attorneys Robert E. McGuire and Brooke C. Farzad and makes the following Response to the Defendant Brockway's Motion to Exclude Evidence (Doc. No 292). The United States previously outlined the reasons why such evidence is admissible, and the case law that supports such a finding, in the Government's Notice of Intent to Use *Res Gestae* Evidence. (Doc. No. 204.) In that Notice, the United States described the facts and evidence that United States seeks to admit. Therefore, the Government will not repeat that factual background in this Response but trusts that the Court will have reviewed it as part of the Court's consideration of the Brockway's present Motion. Similarly, the United States relies on the reasoning and case law cited in that Notice in addition to the arguments made in this Response and, in the interests of judicial economy, will not repeat all of the same arguments and case citations. Ultimately, the United States submits that Brockway's Motion should be denied.

**ARGUMENT**

Brockway cited two pieces of evidence that he considers to be inadmissible against him: statements made by co-conspirators Maund and Peled during a December 2021 phone call and statements made by Brockway to a confidential human source in the summer of 2021. The United States submits that each are admissible against Brockway at a joint trial in this case.

**A.) Maund's statements from the December 2021 phone call are admissible in a joint trial which includes Brockway.**

Brockway's primary argument is that the December 2021 recorded phone call between Maund and Peled should be excluded because it is not relevant to Brockway. Respectfully, the prospect of the admission of evidence that does not completely pertain to one defendant will almost always be true in any trial of joint defendants. This Court had already heard and rejected arguments by Brockway, Carey, and Maund to sever their trials from one another (Doc. Nos. 176 & 279). This aspect of his present motion essentially seeks to gain an "end around" this Court's prior denial of his Motion to Sever by claiming that the same evidence (which this court found non-prejudicial enough to deny his severance motion) is now too prejudicial to be admitted against him. He functionally makes the same argument he made in asking this Court for severance. Yet Brockway essentially now insists – and asks this Court to enforce – the idea that unless evidence is directly relevant to his guilt or innocence personally it should be excluded in a joint trial. Notably, Brockway cites no caselaw for this proposition because none exists. Under Brockway's theory, no joint trials could ever be held unless each statement and piece of evidence was admissible against *all* defendants. This is not the law as the Supreme Court noted in *Zafiro v. United States*, 506 U.S. 534, 113 S.Ct. 933 (1993).

> While "[a]n important element of a fair trial is that a jury consider *only* relevant and competent evidence bearing on the issue of guilt or innocence," *ibid.* (emphasis added), a fair trial does not include the right to exclude relevant and competent evidence. A defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant.

*Id* at 540.

Consider Brockway's argument in the context of a "chain" conspiracy most commonly found in trials concerning narcotics trafficking. In such a case, some members of the conspiracy do not even personally know other members of the conspiracy. Therefore in such joint trials, some

2

evidence would naturally be admitted against one defendant who another defendant did not even know or have any dealings with. *See e.g. United States v. Williams*, 998 F.3d 716 (6th Cir. 2021) (A jury's verdict of guilt on conspiracy was upheld "[a]lthough Barrett may not have known individuals higher in the chain"). In this case, there is no evidence that Brockway and Maund dealt directly with each other and limited evidence that they even knew each other's names. Therefore, it is logical that some evidence in the case would be offered against Brockway that had less relevance for Maund and *vice versa*. However, even such evidence – offered an individual co-conspirator without specific application to the others – is probative regarding the existence of the overarching conspiracy which is an element the United States must prove.

The Government seeks to prove that Maund paid multiple individuals (including Brockway) for the murder of H.W. and W.L. in March of 2020, a charge that is its own conspiracy. One element the United States must prove in the murder-for-hire count (as well as the conspiracy to kidnap count) is agreement. As described in the Government's Notice, Maund's statements as recorded in the call between Maund and Peled would not be offered to establish that Maund actually wanted to have one of the "Nashville shooters" killed in December 2021. Rather, Maund's own statements will be offered to establish Maund's knowledge of and participation in the kidnapping and murder-for-hire conspiracy in March of 2020. Therefore, Maund's own statements are hugely probative against Maund, a co-defendant of Brockway, and go towards whether he agreed with others to pay to have the victims murdered. As noted earlier, under *Zafiro,* Brockway does not get to exclude it simply because it may not implicate him directly. Yet, such proof does go to establish the existence of a conspiracy which, by extension is evidence against Brockway; a conspiracy must exist for there to be co-conspirators. By establishing that the agreement to pay for murders existed (as evidence by Maund's statements that the "shooters" had "did me a solid" and that he would pay $150,000 to Peled's security company account "just like last time") is probative,

at least to a degree, of Brockway's guilt. After all, if the jury concludes there was no agreement that Brockway (or anyone) was paid to murder H.W. and W.L. then Brockway would be acquitted. The government's proof on the agreement between multiple people to commit murder for renumeration does not need to be limited to just proof admissible solely against *Brockway*. Such would fly in the face of the common sense of a joint trial and the edicts of *Zafiro*. But the Court already knows this because the Court cited *Zafiro* in the Court's order denying Brockway's Motion to Sever. (Doc. No. 279, PageID: 1411.)

Brockway's assertion that he will be prejudiced by the jury hearing evidence of Maund's admissions about the March 2020 murder-for-hire is similarly a remix of his severance argument. In denying his severance motion, this Court noted "juries are presumed to be capable of sorting out the evidence and considering the case of each defendant separately." *Id citing United States v. Cordero*, 973 F.3d 603 (6th Cir. 2020). The Government agrees. More importantly, the Supreme Court agrees. In *Samia v. United States*, which was a joint murder-for-hire trial where three men were tried and the inculpatory statements of one (redacted to remove the name of another co-defendant) was described to the jury. *Samia* 599 U.S. \_\_\_\_, 143 S.Ct. 2004 (June 23, 2023). The Supreme Court held that the admission of the confession of one co-defendant (sufficiently redacted and coupled with a limiting instruction) was proper in a joint trial involving nonconfessing co-defendants. *Id* at 2012. While Brockway dismisses the prospect of a contemporaneous curative instruction and limiting jury instruction (Doc. No. 292, PageID #: 1457), the Supreme Court has held that such an instruction is the proper procedure to limit any potential prejudice: "even if there were some risk of prejudice, here it is of the type that can be cured with proper instructions and 'juries are presumed to follow their instructions'." *Zafiro*, 506 U.S. at 939, *citing Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702 (1987). *See also* Samia, 143 S.Ct. at 2013. ("This historical

4

Case 3:21-cr-00288   Document 319   Filed 09/12/23   Page 4 of 8 PageID #: 1686

evidentiary practice is in accord with the law's broader assumption that jurors can be relied upon to follow the trial judges instructions.") This portion of Brockway's motion has no merit.

**B.) Brockway's own statements are admissible in his trial.**

In the second part of his Motion, Brockway takes the astonishing position that statements *he made* that directly concern his actions and intent in committing a double homicide in March 2020 in return for payment are inadmissible and are not *res gestae*. (Doc. No. 279, PageID #: 1458.) As described in the Government's Notice, this is simply not the case. Later statements by a defendant, to the extent that they illuminate his earlier intent to commit a crime, are admissible as *res gestae*. *See generally,* Doc. No. 204. The aspects of the "new" murder-for-hire is context for these admissions.

The United States has previously provided to the Court and to the defense the exact portions of Brockway's statements it intends to play at trial. These portions were chosen specifically to limit the potential proof concerning the new murder-for-hire ruse while preserving the statements that are most probative of Brockway's guilt on the indicted offenses. It is those statements that will be played for the jury. Indeed, to that end, the United States is not seeking to admit two *entire* recorded conversations between Brockway and David Conaway which occurred on November 7, 2021 and November 22, 2021. The remaining recordings which consist of calls between Brockway and Conaway (on September 22, 2021 and November 20, 2021), and a recording of Brockway's meeting with Conaway (on October 25, 2021), have been significantly redacted from their original lengths. For example, regarding the recording of Brockway's meeting with David Conaway on October 25, 2021, the United States intends to play just over 15 minutes of what was over an hour long conversation between the two men. (Doc. No. 280, *Exhibit*.) The United States has worked diligently to focus on the relevant evidence related to the indicted offenses and avoid evidence of the "new" murder-for-hire plot whenever possible.

Unquestionably, and as the United States described in the Notice of Intent to use *Res Gestae* Evidence (Doc. No. 204), these discussions happened within the context of a proposed (and fictional) murder-for-hire plan that Conaway introduced to Brockway and Carey. However, the admission of this proposed plan is unavoidable in order for the jury to understand the admissions made by Brockway within those discussions. As the United States cited in the Notice, the perfect example of this phenomenon occurred, during a conversation between Conaway and Brockway on October 25, 2021, Conaway informed Brockway that the intended "targets" of the "new" murder-for-hire was a male and female couple. Brockway responds by saying that the *new* murder-for-hire plan is "déjà vu." This is a clear reference to his recollection of the murders of H.W. and W.L. which obviously involved a male and female couple and a recognition that this proposed plan is just like the one he has previously committed; the statement makes no sense under any other context. The United States submits that Brockway's statements are admissions about his participation in the murders of H.W. and W.L. and, as such, are exceptionally probative of his guilt and that probative value is not *substantially* outweighed by the danger of unfair prejudice. Brockway attempts to frame Court's analysis inaccurately: "Whether Brockway agreed to a 'new' murder-for-hire months after the Nashville murders is not probative to whether he committed the indicted offense." (Doc. No. 292, PageID #: 1458-59). This is correct, so as far as it goes. However, such a framing misses the point of the evidence. The United States does not seek to prove that Brockway committed the March 2020 murder-for-hire by *whether* (or even *because*) he agreed to a "new "murder-for-hire; the United States seeks to use Brockway's statements about the March 2020 murder-for-hire that came within discussions about the "new" murder-for-hire. *Whether* Brockway agreed to commit a new murder-for-hire (or didn't) is immaterial. Brockway could have made the same probative statements about the March murders while rejecting Conaway's new overture, the statements would be no less (or no more) admissible. While the context in which the

statements were made is important for the jury to understand the probative value of the statements, the United States is not seeking to admit them to establish Brockway intended to commit a new murder-for-hire. The value of the statements – and what makes them relevant and probative – is the light they shed on Brockway's intent and actions to commit the indicted offenses. Therefore, as described above, the United States has dramatically trimmed Brockway's statements to focus on those subjects. As noted in the Government's Notice on *Res Gestae*, the Sixth Circuit is clear that evidence concerning other crimes is admissible if it completes the story of the target offense or, alternatively under 404(b), the probative value is not substantially outweighed by a prejudicial effect of the evidence. This is all the Government seeks.

## CONCLUSION

Not every piece of evidence admitted in a joint trial has to inculpate each individual defendant. Joint trials, particularly trials involving conspiracy, would be impossible if that were the case. However, especially in conspiracy cases, evidence offered against one defendant that establishes the existence of an agreement is still probative against a co-defendant even if not directly. Brockway merely seeks to re-litigate his severance motion, which the Court has already ruled upon, by phrasing the same arguments with different words.

Further, Brockway's admissions – as contained in his recorded statements to David Conaway – are being offered only to show his intent and actions in committing the March 2020 murders. The context may be prejudicial but not overly so, and whatever prejudice exists pales in comparison to the probative value of Brockway's admissions of committing a double murder for payment. The United States offers those statements not to prove the "new" murder-for-hire conspiracy but to prove the indicted one.

The Defendant's Motion should be denied.

7

Case 3:21-cr-00288 Document 319 Filed 09/12/23 Page 7 of 8 PageID #: 1689

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney

By: */s/ Robert E. McGuire*
ROBERT E. MCGUIRE

*/s/ Brooke C. Farzad*
BROOKE C. FARZAD

Assistant U.S. Attorneys
719 Church Street, Suite 3300
Nashville, Tennessee 37203
Phone: (615) 401-6607
Robert.mcguire@usdoj.gov
Brooke.farzad@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served electronically and by hand to counsel for defendant via CM/ECF on September 12, 2023.

*/s/ Robert E. McGuire*
ROBERT E. MCGUIRE