IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | Case No. 3:21-00288-3 |
| v. ) | William L. Campbell, Jr. |
| ) | Chief U.S. District Court Judge |
| ) | |
| BRYON BROCKWAY. ) | |
| ) | |

## MOTION TO REVOKE ORDER OF DETENTION

Comes now, the Defendant, Bryon Brockway ("Brockway"), through his attorney, Luke A. Evans, pursuant to 18 U.S.C. § 3145(b), and respectfully moves this Honorable Court to conduct a *de novo* hearing, revoke the previous Order of Detention, and allow him to be released with conditions pending retrial. As an additional ground for revocation of his Order of Detention, Brockway asserts that his Fifth Amendment right to due process is being violated due to the length of his confinement. In support thereof, Brockway states the following:

1.  When addressing a motion to revoke a magistrate's order of detention the district court must act *de novo* and determine on its own whether detention is proper. *United States v. Yamini*, 91 F. Supp. 2d 1125 (S.D. Ohio 2000); *United States v. Gwathney-Law*, 2017 U.S. Dist. LEXIS 92034, 2017 WL 2609044 (W.D. KY 2017). Brockway respectfully disagrees with the Magistrate Judge's assessment of the weight of the evidence at the initial hearing and would state there is a condition or combination of conditions that would reasonably assure both the safety of the community and the defendant's appearance as required.

2. The Grand Jury returned the Indictment in this case on November 29, 2021. (D.E. 3).[1] Brockway was arrested in San Diego, California on December 10, 2021, and detained. His case was subsequently transferred to the Middle District of Tennessee. On January 24, 2023, the government filed a Motion for Detention. (D.E. 49). That same day, Brockway appeared before Judge Newbern for arraignment and pled not guilty. Brockway waived and reserved his right to proceed with his detention hearing.

3. On March 15, 2022, Brockway filed a Motion to Set Detention Hearing. (D.E. 97). On April 11, 2022, Brockway appeared for his detention hearing via video. The Court heard testimony from Brockway's wife, Danielle Brockway, and his brother, Chad Brockway ("Chad"), both of whom agreed to be third-party custodians. (D.E. 119, Transcript, PageID#408-452). Brockway also proffered several letters in support of his release. (D.E. 119, Transcript, PageID#453). Brockway's witnesses spoke of his service to his country, his devotion to his wife and kids, as well as job opportunities that awaited him if he were to be released. Chad testified that he would allow Brockway to live with him, would further allow the government unfettered access to his home surveillance system if his brother were to be released into his custody, and agreed to use his home as security for an appearance bond.

The government relied on the Indictment and called Agent Cristina Alamo, who explained the basis for the charges in a "general" form and played two recordings of Brockway speaking to a confidential source about a fictitious murder-for-hire job as well as allegedly discussing the charged offenses. (D.E. 119, Transcript, PageID#455-474).

---

[1] The Government superseded the Indictment on July 25, 2022. (D.E. 127). Said indictment charged Brockway, Adam Carey, Gilad Peled, and Erik Maund with Murder for Hire, Conspiracy to Commit Kidnapping and Kidnapping Resulting in Death.

2

4. After considering the evidence, the Court ordered that Brockway be detained pending trial finding that no conditions or combination of conditions would reasonably assure the safety of the community or the Defendant's appearance in Court. (D.E. 104). The Court found that Brockway's charges were "extraordinarily dangerous." (D.E. 119, Transcript, PageID#490). The Court found that Brockway was a "devoted father and husband" with a "strong support system." (D.E. 119, Transcript, PageID#492). The Court also found that Brockway did not have a criminal history, but instead had a "history of extraordinary service to the country." *Id.* The Court found that Chad was an "outstanding third-party custodian." *Id.* Despite those findings, the Court ruled that "the circumstances of the charges and the weight of the evidence of danger do outweigh the other positive factors in this analysis." (D.E. 119, Transcript, PageID#493).

5. On July 28, 2022, the Government filed notice that it would not seek the death penalty. (D.E. 135). Brockway, along with co-defendants Carey and Maund, proceeded to trial on November 1, 2023. On November 17, 2023, the Jury found Brockway and Carey guilty on all counts, and Maund guilty on one count. In February of 2024, Brockway and his co-defendants filed motions for a new trial after learning that extraneous information had been provided to the Jury during deliberations. After months of litigation on the issues raised by Brockway and his co-defendants in their respective motions, on September 17, 2024, the Court set aside the jury's verdict and granted all defendants a new trial. (D.E. 561). On October 15, 2024, the Government appealed the Court's Order granting the defendants a new trial pursuant to 18 U.S.C. § 3731.[2] (D.E. 565). The case is currently before the Sixth Circuit

---

[2] Brockway has not been sentenced and the jury verdict was set aside; therefore, the Court must "release or detain pursuant to section 3142." 18 U.S.C. § 3143(c)(2).

3

Court of Appeals awaiting the filing of the Government's first brief. As of the filing of this motion, Brockway has been in pretrial custody for over 3 years.

6. Contrary to the Order of the Magistrate Judge, even with the presumption in favor of detention, the Government failed to establish by clear and convincing evidence that there were no conditions of release that would reasonably assure the safety of the community and/or proof by preponderance of the evidence that there were no conditions of release that would reasonably assure the defendant's appearance as required. The nature and circumstances of the offense are very serious as they include murder and kidnapping. However, other than the dangerous nature of the offenses, which the Magistrate Judge weighed heavily in favor of detention, the proof established that the other factors as set forth in 18 U.S.C. § 3142(g) weighed in favor of Brockway's release on conditions. Brockway's history and characteristics speak to his releasability; he has no criminal history, strong family ties, stable employment, community ties, and a long history of service to his country and to his family.

Most notably, the testimony of Brockway's brother, Chad, warrants his release on conditions. He volunteered to act as a third-party custodian for his brother. (D.E. 119, Transcript, PageID#430). Since being honorably discharged from the marines, Chad worked for the Department of Defense, the FBI and now works in the private sector. *Id.* at PageID#428. He currently resides in Aldie, Virgina. (D.E. 119, Transcript, PageID#423). Chad testified about his elaborate security system at his home that included a live motion video feed around the exterior of his home with motion sensors. *Id.* at PageID#433. The security system also includes multiple video cameras inside the home that record each of the exits. *Id.* As a condition of release, he agreed to give the Government full access to the system so

that they could remotely monitor his brother. *Id.* Chad owns his home and testified that it was valued at approximately $1,250,000.00. (D.E. 119, Transcript, PageID#439). He agreed to use the property as security for an appearance bond for his brother. *Id.* Based upon the evidence, there are conditions of release that would reasonably assure the safety of the community and the defendant's appearance in Court; therefore, the Order of detention should be revoked and Brockway should be released on conditions

7. Even more concerning is the fact that Brockway's lengthy detention has become punitive and volative of due process. Personal liberty is of the utmost importance in our society, thus, "long periods of pretrial detention are anathema to our basic notions of due process." *United States v. Gallo*, 653 F. Supp. 320, 343 (E.D.N.Y. 1986). It is well settled that "pretrial detention violates the Fifth Amendment when it amounts to punishment of the detainee." *United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012) (quoting *Bell v. Wolfish,* 441 U.S. 520, 535 (1979)); *see also United States v. Tawfik,* 852 Fed. App'x 965, 965 (6th Cir. 2021) ("A lengthy pretrial detention can violate the Due Process Clause of the Fifth Amendment when it lasts long enough to become punitive."). The Court must consider four factors when assessing an alleged due process violation: (1) the length of confinement; (2) the prosecution's responsibility for the delay; (3) the gravity of the charges; and (4) the strength of the evidence supporting the detention decision. *Watson, 475 F. App'x at 601*. The Court should also consider "additional factors such as the length of the detention that has in fact occurred or may occur in the future" and "the non-speculative nature of future detention." *United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989)

Due process is necessarily a case-specific inquiry, as is the question whether regulatory pretrial detention has become punitive. *Watson,* 475 F. App'x at 601*.* At some

5

point, pretrial detention may become so protracted as to violate due process and require release. *See United States v. Theron, 782 F.2d 1510, 1516 (10th Cir. 1986)*(explaining that "valid pretrial detention assumes a punitive character" and therefore "may violate due process" "when it is prolonged significantly"); *see also United States v. Briggs*, 697 F.3d 98, 103 (2d Cir. 2012) (recognizing that lengthy detentions can implicate due process concerns, stating that "the Constitution imposes no bright-line limit on the length of pretrial detention," and expressing concern about a nearly 26-month detention); see also *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988)(thirty-two-month detention was long enough to violate due process and necessitated the defendants release on conditions). As noted in Briggs, "[t]he longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to be deemed sufficient to justify the detention's continuance." *Briggs*, 697 F.3d at 101.

In the instant case, Brockway's pretrial detention is punitive and thus violates his right to due process. Brockway has been in custody for over 3 years. Based upon the Government's appeal, he is not likely to see a retrial of his case for many months. The current delay weighs entirely on the prosecution as it was their decision to appeal the matter instead of accepting the Order of the Court and promptly setting the case for retrial. The charges in this case, murder for hire and kidnapping, are no doubt serious; however, as argued above, the evidence supporting the detention decision was insufficient to warrant detention under the Bail Reform Act in the first place, and therefore, the Court should revoke the Order of Detention and release Brockway on the conditions requested in his detention hearing to avoid further infringement of his constitutional rights.

6

**WHEREFORE, PREMISES CONSIDERED,** the Defendant moves this Court to revoke his Order of Detention and release him on conditions.

>Respectfully Submitted,
>
>Evans Bulloch & Parker, PLLC
>
>/s/ *Luke A. Evans*
>LUKE A. EVANS, BPR# 23620
>Attorney for Defendant
>P.O. Box 398
>302 North Spring Street
>Murfreesboro, TN 37133
>(615) 896-4154
>lukeevans@bfhelaw.com

<u>Certificate of Service</u>

I hereby certify that on December 30, 2024, I electronically filed the foregoing Motion with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to: **Rob McGuire and Brooke Farzad**, Assistant United States Attorneys, 719 Church Street, Suite 3300, Nashville, Tennessee 37203.

>/s/ *Luke A. Evans*
>LUKE A. EVANS

7

Case 3:21-cr-00288   Document 571   Filed 12/30/24   Page 7 of 7 PageID #: 6447