UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:21-CR-00288-3 |
| | ) | |
| | ) | CHIEF JUDGE CAMPBELL |
| ERIK MAUND | ) | |

## RESPONSE TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

COMES NOW the United States of America, by and through the undersigned Acting United States Attorney, Robert E. McGuire, and, pursuant to this Court's order (Doc. No. 575), makes the following Response to Defendant Maund's Motion. (Doc. No. 574.) The Motion, while titled as a "Motion to Revoke Order of Detention", is actually, as noted in the first sentence of the body of the Motion, a Motion to <u>reopen</u> the previously held detention hearing. However, the Defendant has not cleared the high bar to re-open a detention hearing therefore the Defendant's Motion can be denied.[1] Moreover, even if the Defendant had cleared that high bar, there is ample reason for the Court not to re-open the detention hearing and sufficient reason for him to remain detained pending further proceedings. In short, the Defendant remains—as this Court has previously found him to be—a danger to the community and a flight risk and nothing that has occurred in the months between this Court's prior order and the Defendant's Motion has changed those operative facts.

The Defendant was arrested in December 2021 and initially waived and reserved his right to have a detention hearing. (Doc. No. 83.) He then asked for a detention hearing be set before

---

[1] The United States has previously noted that the Court can deny motions concerning detention litigation without prejudice because the United States has appealed this Court's reversal of a conviction by a jury. (Doc. No. 573.) The United States hereby incorporates those arguments by reference in this Response. However, since the United States knows that that Court read those arguments in reviewing the detention revocation motion filed by Defendant Brockway, the United States will not repeat those arguments here. The lack of repeating that argument should not indicate the United States has abandoned the argument or somehow now believes that Maund's cited cases (largely from circuits other than the Sixth Circuit) meaningfully change the rubric described in the Government's response to Brockway's Motion. The lack of repeating is simply done for judicial economy.

U.S. Magistrate Judge Holmes, a hearing that was later held with both sides offering testimony. (Doc. No. 192.) After that hearing, Judge Holmes issued an order detaining the Defendant pending trial. (Doc. No. 193, 194.) The Defendant asked this Court to revoke that order. (Doc. No. 198.) This Court, finding that the Defendant was a danger to the community and a flight risk, affirmed and adopted Judge Holmes' Order of Detention, and denied the Defendant's Motion to Revoke. (Doc. No 205.) Since he has already asked this Court to review the Order of Detention once—and §3145 does not contemplate that he gets to do it twice—the Defendant must now try to convince this Court to "reopen" his detention hearing and allow him to present evidence:

> The hearing may be reopened…if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. §3142(f).

There are two requirements for the Court to even consider[2] granting a motion to reopen a detention hearing: 1) the information must be not known to the movant at the time of the hearing; and 2) the information must be material on the issues involved in the hearing. In this case, the Defendant can establish neither.

First, the Defendant submits that there is a "new posture" of the case that allows this Court to reopen the detention hearing. To this end, the Defendant functionally attacks (again) the testimony of co-conspirator Gilad Peled. (Doc. No. 574, PageID #: 6457.) However, as the Defendant references (in a footnote) this Court *already had* the benefit of Mr. Peled's testimony because Peled testified, subject to cross-examination, at the original detention hearing before Judge Holmes (a transcript that the Court noted it had reviewed in the Court's order denying the

---

[2] As we shall see, even if these threshold requirements *were* met (though they are not here), the Court could *still* decline to reopen the detention hearing as a matter of this Court's discretion.

Defendant's revocation of Judge Holmes' order). (Doc. No. 205, PageID #: 1153.) The Defendant understandably engages in some advocacy in his Motion and hopes this Court will see the evidence their way. However, this advocacy—indeed, the labeling of something as "new"—does not change the facts on the ground. Calling a fact "new" does not make it make it so. The cherry picking of aspects of the prior trial proceedings that the Defendant believes favor him at the expense of the ignorance of clear facts that show him to be guilty of paying for double murder, does not constitute "new" evidence either.

On balance, the evidence of the Defendant's guilt became *more* pronounced at trial, not less. At trial, the Court had the opportunity to take its measure of Peled. Much of what the Defendant now describes to malign Peled was actually already present in Peled's detention hearing testimony (i.e., his initial description of the March 12th conversation to the FBI compared with his later admission that this early description was self-serving.) The Defendant attempts to suggest that Peled's testimony cannot be believed but conveniently ignores that the jury credited it by finding Maund guilty of murder-for-hire with death resulting. Certainly, the corroborating evidence that supported Peled's testimony as to Maund was also persuasive; there's no reason why it shouldn't be equally persuasive the Court when considering whether to release the Defendant.

For example, and this Court also heard evidence (and saw bank records corroborating that evidence) proving that the Defendant paid $900,000 for the murder of two people, one of which was a complete stranger. At trial the Court heard evidence that the two people would not have been murdered but for the Defendant agreeing to pay for it. The Court heard evidence that the Defendant was prepared to eliminate another co-conspirator when he believed that person was a threat to him. The Defendant invites the Court to consider the trial testimony but, respectfully, the trial testimony (which was largely forecast at the detention hearing) does nothing but amplify the idea that the

Defendant is an exceptionally wealthy, cold-blooded man who had little compunction about hiring others to murder strangers should they become a threat to him. Which, of course, is one of the reasons the Court ordered him detained in the first place. Respectfully, there is no "new evidence" here, despite the efforts of the Defendant's counsel.

The Defendant notes that the Defendant was acquitted of the conspiracy to commit kidnapping offense and submits that is "new" evidence unknown to the movant at the time of the original hearing. Given the sequence of events (that the detention hearing came before the trial, as it always would) this follows *a priori*. It would be impossible to be otherwise. The United States submits that the Sixth Circuit case of *United States v. Watson*, 475 Fed.App'x 598 (6th Cir. 2012), is instructive on this point. In *Watson,* the defendant had a detention hearing, was ordered detained, and then was successful in suppressing at least some of the evidence the government had intended to use at trial. *Id* at 599. Watson then moved to re-open the detention hearing citing that, by dint of his successful suppression motion, the government's case against him was now weaker, the argument that the Defendant now makes given the verdict at trial. *Id*. In *Watson,* the district court denied Watson's motion to reopen his detention hearing on the basis that he was successful in his suppression hearing, finding that suppression of evidence was not a basis to reopen a detention hearing. *Id*. Functionally, there was plenty of *remaining* evidence (despite the loss of some of the government's proof) for the district court to detain Watson pending trial. *Id.* On appeal, the Sixth Circuit found that the district court had not abused its discretion in so finding. *Id.* at 600.

Here, the Defendant attempts to use a subsequent (but positive for him) case development —that the jury acquitted him of the kidnapping count—in an effort to bootstrap a reopening of his detention hearing. *Watson* would stand for the proposition that a subsequent legal development, like the one the Defendant points too, would *not* be a basis to re-open a detention hearing. *Id.*

Additionally, like in *Watson*, this Court can determine that while the Defendant was acquitted of kidnapping with death resulting, even if that served as a basis to re-open his detention hearing, he was *convicted* of murder-for-hire with death resulting (even if the Court later set that verdict aside). The United States is aware, of course, that the acquittal is now part of the framework of the case and the setting aside of the Defendant's murder-for-hire conviction is on appeal. However, in order to intellectually advance one idea that benefits the defendant (he was acquitted of kidnapping which is, thus, a new fact) the Court cannot logically ignore its co-equal idea (that he was also convicted of an offense carrying life imprisonment) as part of the Court's calculus. In any event, it would appear that the "new fact" of the Defendant's acquittal on a kidnapping count is obliterated by the fact that a jury found beyond a reasonable doubt that he had caused the murder of two people. Like in *Watson*, there remains plenty of substantive evidence upon which the Court can decide to detain the Defendant (for instance, that he's responsible for double murder).

If nothing else, this argument—that the Defendant was acquitted on one count but was convicted on the other count—can be well considered through the lens of the second prong of the §3142(f) reopening analysis: materiality. It is not enough that the Defendant can establish "new information that was unknown to the movement at the time of the hearing"; the Defendant must also establish that the "new information" has a material bearing on whether there are conditions of release that will reasonably assure his appearance at trial and the safety of the community. "In other words, the new information must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *Watson*, 475 Fed.App'x at 600.

The Defendant's alleged "new information" does not change the original rubric the Court considered in reviewing Judge Holmes' original order. If anything, the Defendant now knows

that—having sat through a jury trial—that his attacks on Gilad Peled as well as other defenses he offered, despite the excellent efforts of his talented defense team, fell short and a jury of twelve citizens convicted him of murder-for-hire for which he would face life imprisonment. He would have an extraordinary motivation to flee; motivation that is only enhanced by his knowledge that his previous defense to the most serious offense for which he is indicted failed the first time. Given that the United States only has to prove flight risk by preponderance of evidence, his position based on the "new information" is *worse* not better.[3] How could an acquittal on kidnapping materially change the facts considered at his first detention when coupled with the notion that he was *convicted* of murder-for-hire? Indeed, the Defendant is in functionally the same situation he was in when this Court first considered his Motion to Revoke Judge Holmes' detention order. Only now this Court has seen the bank records illustrating his blood money payments to killers, has heard his cold and lackadaisical attitude regarding the murders ("he did me a solid") and has the ability to vividly recall the Defendant's complete lack of compunction in order *another* murder for $100,000 "like last time".

Finally, an important word in the section of §3142(f) regarding the reopening of a detention hearing is the word "may". In that, this Court "may" reopen a detention hearing if the Court finds that the threshold issues have been made but, even then, the Court does not have to.

> While a basis to reopen arguably exists, attention must again be turned to the use of the word "may." *See id.* ("suppression of all the evidence in the case is information that *may* form the basis upon which a detention hearing *may* be reopened") (citing *Peralta,* 849 F.2d at 625) (emphasis added). As previously mentioned, use of the word "may" indicates discretion on the part of the district court.

---

[3] The Defendant attempts to argue that post-trial publicity makes it less likely to flee; this is a red herring. Undersigned counsel cannot speak intelligently on the consumption of *20/20* in Indonesia, Dubai, Vanuatu, Equatorial Guinea, or any of the other countries who do not share extradition treaties with the United States. Respectfully, however, it does not stand to reason that even if the Defendant was recognized in any of those far off locales that such recognition would somehow incentive those (often hostile) foreign governments to cooperate with American efforts to expel the Defendant to stand trial for double murder. The Defendant has limitless resources to live a life of anonymity in Bali, Indonesia regardless of which channels most Indonesians watch.

*United States v. Watson*, 475 F. App'x 598, 601 (6th Cir. 2012)

This discretion brings us back to the Government's footnote at the start of this Motion. A jury found the Defendant guilty of murder-for-hire with death resulting. This Court set that verdict aside and the Government has appealed that ruling. A reversal of this Court's order by the appellate court would render this entire litigation moot because the Defendant would stand convicted of an offense carrying a sentence of life imprisonment. Therefore, the United States submits that even if the Court finds that it "may" reopen this detention hearing, the jury's prior verdict (and the appeal related to that verdict) counsel that this Court should not reopen it.

Finally, Defendant Maund has alleged that his pre-trial detention violates due process. The United States would adopt the arguments as to Maund that were made by the United States as to Brockway, who raised similar arguments. (Doc. No. 573.) The only real difference between the two Defendants as to detention (other than Brockway is on his "direct" appeal of the Magistrate Judge detention order) is that Brockway was convicted of *more* equally serious charges involving the murder of two individuals. To the extent that Maund tries to leverage this distinction, it is one without a difference. Maund, like Brockway, was convicted by a jury of murder-for-hire and, should the Sixth Circuit reverse this Court's setting aside of that conviction, he would face life imprisonment (just as Brockway). Short of a capital murder charge, there is no more serious charge that the United States and bring against a defendant. The fact that other defendants in the case have *more*, equally serious charges does not somehow make Maund's charge *less* serious. The strength of the Government's case as to detention, the fourth of the *El-Hage* factors, is exceptional. It has even been jury tested – and the jury found the Defendant to be guilty of murder-for-hire with death resulting beyond a reasonable doubt. There is no rule, nor a case cited by the Defendant, that

advises that this Court can conveniently ignore that fact which occurred and is known by this Court and all parties, whatever the posture of the case is now.

Because the Defendant has not carried his threshold burden under §3142(f) as to "new information" or "materiality" the Court can deny the Defendant's Motion to Reopen the Detention Hearing. Even if the Court believes that the Defendant *has* carried that burden, the Court is not required to reopen the hearing because of the discretion the Sixth Circuit has previously described. Based on the pending appeal, the Court should use the Court's discretion to deny the Defendant's Motion and the Defendant should remain detained pending further proceedings. The Defendant's continued detention is not the fault of the United States and has not violated his due process rights. The Defendant's Motion should be denied.

Respectfully submitted,

By: *s/ Robert McGuire*
ROBERT McGUIRE
Acting United States Attorney
719 Church Street, Suite 3300
Nashville, Tennessee 37203-3870
Telephone: 615-736-5151